[Sac. No. 514. In Bank.—April 7, 1900.]

## G. S. CHAPPIUS et al., Respondents, v. WILLIAM BLANK-MAN et al., Appellants.

MECHANICS' LIENS—ESTATE OF DECEASED PERSON—POWER OF EXECUTOR—CONTRACT TO WORK MINE—NOTICE TO LABORERS.—An executor has no power as such to make any contract which would give laborers under the contractor in a mine known to belong to the estate a right to file liens thereupon. A contract to work a mine belonging to the estate, signed by the executor, as such, if it is known to laborers under the contractor, is notice of all that it contains, and would preclude laborers' liens upon the mine.

ID.—TITLE IN INDIVIDUAL NAME OF EXECUTOR—IMPLIED TRUST—PROBATE PROCEEDINGS—NOTICE—PROTECTION OF BONA FIDE LIENHOLDERS.—Where the laborers were ignorant of the existence of the contract with the executor, and the title to the mine stood upon the records in his individual name, as an implied or resulting trust for an estate which he was administering in another county, the laborers are not chargeable with notice of the probate proceedings, as affecting the legal status of the mine, but are protected in their liens acquired for work done in actual ignorance of the rights of the estate, as encumbrancers for value without notice of the trust, within the meaning of section 856 of the Civil Code.

ID.—LIENS UPON MINING CLAIM—LABORERS TAKING OUT ORE.—Work done by laborers in a quartz mine in taking out ore, or breaking down and tearing away from the face of the drifts and mine the quartz and substance of the mine, is work for which a lien upon the mine may be claimed under the terms of section 1183 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, for Appellants.

The executor held the mine solely for the purpose of administration. (Code Civ. Proc., sec. 1452.) He had only the power given him by statute. (Code Civ. Proc., sec. 1581 et seq.) He had no power to bind the estate by liens. (*Cook v. De la*

*Guerra*, 24 Cal. 237; *Tompkins v. Weeks*, 26 Cal. 51; *Crystal v. Flannelly*, 2 E. D. Smith, 583; *Weathersby v. Sinclair*, 43 Miss. 189; *Brenham v. Story*, 39 Cal. 179; *Mulligan v. Smith*, 59 Cal. 225.)

Lardner & Burns, Pullen & Wallace, and Charles Tuttle, for Respondents.

The legal title being of record in the executor personally, the probate proceedings were not constructive notice to the plaintiffs of anything affecting the title. (*Nidever v. Ayers*, 83 Cal. 39; *Stockton etc. Assn. v. Chalmers*, 65 Cal. 93; *Hibbs v. Insurance Co.*, 40 Ohio St. 543.) The lienholders were entitled to protection as encumbrancers for value without notice of the trust. (Civ. Code, sec. 856; 10 Am. & Eng. Ency. of Law, 361.) De Varila, the employer, must be regarded as the agent of Blankman, the apparent legal owner of record. (Code Civ. Proc., sec. 1183; *Donohoe v. Trinity etc. Min. Co.*, 113 Cal. 119.)

GAROUTTE, J.—This action is brought to foreclose mechanics' liens for labor performed upon a mining claim. Defendant De Varila suffered default. Defendant Blankman appeared, and now appeals from the judgment and order denying his motion for a new trial. The material facts are briefly these: Blankman was the executor of the last will and testament of David Buck, deceased. As such executor, under an order of the probate court, he paid the balance due upon a contract of sale for the purchase of the Eclipse Quartz Mine, which contract had been entered into by Buck during his lifetime. Blankman took the deed in his individual name, and it was subsequently recorded in Placer county, where the mine was situated. Notwithstanding the title to this mining property stood in the name of Blankman, it was the property of the estate of Daniel Buck, deceased, and was returned as the property of that estate in the inventory and appraisement thereof. In addition to this fact, throughout the administration the property was recognized and treated as the property of said estate. Pending the administration Blankman wrote a letter to De Varila in substance as follows:

"Referring to our recent conversation *in re* the Eclipse Gold

Quartz Mine Consolidated, I will.say that, as executor of the estate of Daniel Buck, deceased, I hereby direct and empower you to pump out, open, and work for the benefit of the said estate of Daniel Buck, deceased, and all persons interested therein . . . . the said Eclipse Quartz Mine. This work will, of course, be quite expensive to you, and in recompense for the risk thereby taken you will keep to yourself fifty-hundredths of the net proceeds of said mine, the remaining fifty-hundredths of the net proceeds to be paid to the estate of Daniel Buck, deceased, for the use above described.

"WILLIAM BLANKMAN, Exr."

Upon the receipt of this letter De Varila employed laborers and proceeded to work the mine by pumping out the water, taking out the ore, etc. These laborers now form the plaintiffs who are bringing the present action to foreclose their liens upon the mine for the labor so performed.

It does not appear necessary to give a construction to this letter under which De Varila went to work on the mine. It may have been a lease of the mine, or it may have been only a hiring of De Varila. Whatever the writing amounted to in law it was given by Blankman, as executor, and, if it was notice of anything to plaintiffs, it was notice of everything it contained. And whatever authorization was found in the writing, it was not an authorization by Blankman individually, but by Blankman as executor, and as executor he had no power to make any contract which would give plaintiffs a right to file liens upon the property of the Buck estate. (*Fish v. McCarthy*, 96 Cal. 484; 31 Am. St. Rep. 237.) But, in addition to this, it may be added that plaintiffs knew nothing whatever of this writing held by De Varila. Again, we attach no importance to the pending probate proceedings of Buck's estate in the city and county of San Francisco. Those proceedings afforded no notice to plaintiffs in Placer county as to the status of the title to the mine. (*Nidever v. Ayers*, 83 Cal. 39.)

After clearing away the underbrush, the case in its facts is reduced to a very simple form. De Varila took possession of the mine and hired these plaintiffs to work therein. At that time the legal title to the property stood in the name of Blankman, and plaintiffs had constructive notice of the fact by rea-

son of the recordation of the deed to Blankman in Placer
county.   De Varila was working the mine without objection
upon the part of Blankman, and with his knowledge.   Upon
this state of facts it is contended by respondents that the trans-
action of the executor Blankman in paying out the money of
the estate for the mining property and taking the deed thereto
in his own name amounted in law to the creation of an implied
or resulting trust wherein he was the trustee.   And for that
reason it is further claimed that section 856 of the Civil Code
contains the rule of law applicable to the aforesaid facts.   The
section provides: "No implied or resulting trust can prejudice
the rights of a purchaser or encumbrancer of the real property
for value, and without notice of the trust."   In view of this sec-
tion it is then claimed that the respondents are encumbrancers
for value, and, therefore, the existence of the trust cannot preju-
dice their rights.   If Blankman had sold this property to a
*bona fide* purchaser for value, without notice of the title of the
estate, such a purchaser would have held the property against
the estate under the law declared in the foregoing section of
the code.   For he would have been a purchaser answering to
the description laid down in that section.   A mortgagee who
answered to the description declared in that section would like-
wise be an encumbrancer as against the title of the estate.
And, although there is no authority found upon the question
as far as our investigation has gone, yet we have arrived at the
conclusion that these plaintiffs have brought themselves within
the aforesaid section of the code, and may be termed encum-
brancers of the kind there described.   They parted with their
labor—a thing of value—upon the knowledge that Blankman
was the owner of the property.   They did the work in good
faith, and had no notice that the estate of Buck held the equi-
table title to the property.   Upon the filing of their liens their
rights related back to the time that the labor was performed,
and upon the filing of their liens they became encumbrancers
within the aforesaid section of the Civil Code.

It is contended that the work done for which liens are
claimed, to wit, "breaking down and tearing away from the face
of the drifts and mine the quartz and substance of the mine,"
is work and labor tending to destroy the property rather than

improve it, and was not labor performed "in the construction and alteration or repair of the mine," for which liens are allowed under sections 1183 to 1192 of the Code of Civil Procedure. Upon this point we are satisfied said section 1183 is sufficiently broad to entitle these plaintiffs to file liens for the work done.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., McFarland, J., Harrison, J., and Henshaw, J., concurred.